[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15511

_____

Agency No. A076-893-472

RICHARD NZAU MATUNDU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 25, 2014)

Before HULL, MARCUS, and DUBINA, Circuit Judges.

PER CURIAM:

Richard Nzau Matundu, a native and citizen of the Democratic Republic of Congo ("the DRC"), formerly Zaire, petitions for review of a decision of the Board of Immigration Appeals ("BIA") that denied Matundu's motion for reconsideration of his earlier motion to reopen removal proceedings. After review, and with the benefit of oral argument, we conclude that the BIA did not abuse its discretion in denying Matundu's motion for reconsideration.[1] Accordingly, we must deny Matundu's petition.

## I.  BACKGROUND

### A.    1998 Asylum Application

In May 1996, Matundu entered the United States on a non-immigrant visa, which he overstayed. On November 6, 1998, Matundu applied for asylum, claiming fear of persecution due to the regime change in the DRC. Specifically, Matundu averred that the new regime, controlled by Laurent Kabila, was deeply hostile to political opponents, particularly those associated with the ousted regime of Mobutu Sese Seko. Matundu claimed that his work (as a customs officer) and his friendship (principally as a practicing Christian) with Ngbanda Nzamboko ("Ngbanda") would endanger him if he were to return to the DRC.

---

[1]Matundu raises no challenge to the denial of the second motion to reopen, as construed by the BIA, and he therefore abandons that issue on appeal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Hence, we will not separately address Matundu's second motion to reopen.

Ngbanda is a member of Mobutu's family and was previously active in the Mobutu regime's security apparatus.  Beginning in 1990, Ngbanda employed Matundu as a customs officer with ADEN, a government-supported, privately-run customs agency, and Ngbanda appeared with Matundu to discuss their shared practice of Christianity on a national television program.  In his initial asylum application, Matundu explicitly claimed: (1)  that he worked for President Mobutu; (2) that his friendship with Ngbanda resulted in him being "suspected unjustly of being a supporter of the Mobutu regime"; (3) that his then-wife had been threatened by the new Kabila government; and (4) that, due to the Kabila government's approach to "cleaning out the ideas of Mobutu," Matundu feared "arrest[], imprison[ment], and kill[ing] by agents of the new government."

In December 1998, the Immigration and Naturalization Service ("INS") served Matundu with a Notice to Appear, charging that he was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted.

On March 18, 1999, Matundu withdrew his asylum application and agreed to voluntary departure.  On the same day, the Immigration Judge ("IJ") granted voluntary departure with an alternate order of removal.  Matundu has remained in the United States from 1996 to the present.

3

**B.      2012 Motion to Reopen**

Nearly thirteen years later, on February 10, 2012, Matundu filed a motion to reopen his 1999 removal order, arguing that he was eligible for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") because of changed country conditions in the DRC.

The Kabila regime remains in power in the DRC.  In 2001, Laurent Kabila's son Joseph Kabila ascended to the presidency.  Matundu averred that President Joseph Kabila's consolidation of power and alleged targeting of political opponents, combined with Ngbanda's opposition activities in exile, constituted changed circumstances warranting reopening of Matundu's asylum application.  In addition, Matundu attached a variety of exhibits to his motion to reopen.  These included two documents, dated 2002 and 2003, purporting to show that Matundu was wanted for arrest by the Kabila government.  Neither document was authenticated.  The hand translations accompanying the documents do not bear any accompanying affidavits.

In September 2012, the IJ denied Matundu's motion to reopen. The IJ's written order stated: "All evidence has been considered, even if not specifically discussed further in this decision."  The IJ found that Matundu had failed to demonstrate changed country conditions in the DRC because his original 1998 asylum application "state[d] the same fears that he assert[ed in his 2012 motion to

4

reopen]—that the current government will target him for his past associations with Mr. Ngbanda."

Matundu timely appealed to the BIA, arguing that the IJ had abused her discretion in denying his first motion to reopen. On July 29, 2013, the BIA dismissed Matundu's appeal. Though it independently reviewed Matundu's evidence and did not explicitly adopt particular findings of the IJ, the BIA agreed with the IJ's conclusion that Matundu had not established changed country conditions.

## C.    2013 Motion for Reconsideration

On August 28, 2013, Matundu timely filed a motion for reconsideration, which the BIA denied on November 5, 2013. The BIA determined there were no material factual errors in its July 29, 2013 decision and denied the motion to reconsider. The BIA separately determined that, to the extent Matundu's motion for reconsideration put forth a second motion to reopen, it was untimely and number barred.

On December 3, 2013, Matundu timely filed his petition for review in this Court. The petition is timely only as to the November 5, 2013 BIA decision.

## II.  STANDARD OF REVIEW

We review the BIA's denial of a motion to reconsider for an abuse of discretion. Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1328 (11th Cir. 2007). Under

5

the abuse-of-discretion standard, our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious. Montano Cisneros v. U.S. Att'y Gen., 514 F.3d 1224, 1226 (11th Cir. 2008).

Similarly, we review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion. Li v. U.S. Att'y Gen., 488 F.3d 1371, 1374 (11th Cir. 2007). Because motions to reopen removal proceedings are especially disfavored, the movant bears a "heavy burden." Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). Here, we review only the BIA's decision because the BIA did not expressly adopt the IJ's opinion or reasoning. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

### III.  DISCUSSION

### A.    Changed Country Conditions

Generally, an alien may file only one motion to reopen removal proceedings, and that motion must be filed within ninety days of the final order of removal. INA § 240(c)(7)(A), (C)(i), 8 U.S.C. § 1229a(c)(7)(A), (C)(i). Matundu's 2012 motion to reopen was untimely as to his 1999 removal order. These time and numerical limits do not apply, however, if the movant can show "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not

6

have been discovered or presented at the previous proceeding." INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii) (emphasis added).

To succeed on an untimely motion to reopen based on changed country conditions, the movant must show that there is new evidence that is material, was not available, and could not have been discovered or presented at the removal hearing. See 8 C.F.R. § 1003.2(c)(1); see also Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006). To be material, the evidence must be of the kind that, if the proceedings were reopened, would likely change the result in the case. See Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006). A motion to reconsider must show a factual or legal error in the BIA's prior decision—in this case, the BIA's decision affirming the IJ's denial of Matundu's motion to reopen. See 8 C.F.R. § 1003.2(b)(1); In re O-S-G, 24 I. & N. Dec. 56, 56-57 (BIA 2006).

The BIA is not required to analyze each piece of evidence individually, so long as the BIA gave reasoned consideration to Matundu's motion to reopen and made adequate findings, which it did here. See Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006). The BIA's July 29, 2013 decision reviewing the ruling of the IJ held that the evidence submitted by Matundu was insufficient to demonstrate changed country conditions.

7

For two reasons, we find no abuse of discretion in the BIA's November 5, 2013 denial of Matundu's motion for reconsideration of this July 29, 2013 decision.  First, much of the evidence entered by Matundu mirrored claims in his original 1998 petition for asylum, which he withdrew when he agreed to voluntary departure in 1999.  Second, the BIA also did not err in holding Matundu failed to authenticate key documents according to the procedures for authenticating documents addressed in 8 C.F.R. § 1287.6(b).  See Ali, 443 F.3d at 813-14 ("[T]he burden of authentication [is] on [the petitioner], not the BIA.").  The BIA is entitled to discount unauthenticated documents.  Chen v. U.S. Att'y Gen., 672 F.3d 961, 964 (11th Cir. 2011) (holding that "[u]nauthenticated documents lack veracity and are entitled to no deference").

We need not decide whether 8 C.F.R. § 1287.6 is the exclusive method for authenticating documents because the BIA determined that Matundu failed to attempt authentication by other means, such as by seeking affidavits from family members in the DRC or from the attorney who allegedly assisted them in retrieving these documents.  See Mu Ying Wu v. U.S. Atty. Gen., 745 F.3d 1140, 1154 (11th Cir. 2014).  Matundu's affidavit and the mailing slip establish how he received the documents from his family in the DRC, but they do not demonstrate in any way that the two documents in fact originated from an official government office.

8

Matundu's arguments in his motion to reconsider reiterated the same arguments he had presented in both his motion to reopen before the IJ and his subsequent appeal to the BIA, and such reiterated arguments do not constitute errors of law or fact that would warrant reversing the BIA's denial of a motion to reconsider.  See Calle, 504 F.3d at 1329 ("[M]erely reiterating arguments previously presented to the BIA does not constitute 'specifying errors of fact or law' as required for a successful motion to reconsider." (alteration omitted)).

## IV.  CONCLUSION

For these reasons, we deny Matundu's petition.

**PETITION DENIED.**